IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:09-cv-136

| | |
|---|---|
| MARX INDUSTRIES, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| BASELINE LICENSING GROUP, LLC, | ) ORDER |
| Defendant | ) |
| vs. | ) |
| CONSUMER SPECIALTIES INCORPORATED OF NORTH CAROLINA, | ) |
| Third-Party Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion to Dismiss Defendant's Counterclaim (Doc. #10), filed January 29, 2010, and Third-Party Defendant Consumer Specialties of North Carolina's ("CSI") Motion to Dismiss Breach of Contract Claim (Doc. #15) filed February 4, 2010. The parties have filed responsive memoranda and this matter is now ripe for review.

### I. BACKGROUND

Accepting the factual allegations of Defendant's Counterclaim as true, as this Court must do at this stage of the proceeding, the facts are as follows. Defendant Baseline is in the business of marketing, selling, and distributing college and professional sports-related merchandise. Because Baseline does not manufacture the goods it sells, it contracts with third parties for

1

production of goods.

Marx and Baseline entered into a business relationship prior to 2009 wherein the parties agreed that Marx would manufacture certain merchandise to be sold by Baseline to its customers. Marx and Baseline memorialized their agreement in writing and Marx attached a copy of the written agreement to its complaint. Defendant Baseline alleges that during the period in which Marx and Baseline operated under the terms of the written agreement, Baseline "consistently experienced problems with the quality and timeliness of the delivery of the goods produced by Marx." Countercl. ¶¶ 7-9. Defendant Baseline next alleges that it suffered economic damages due to impermissible unilateral price increases by Marx. Countercl. ¶¶ 10-11.

As a result of the problems with performance under the written agreement, Baseline alleges that it entered into discussions with Marx in 2009 to alter their business relationship to include CSI. Baseline and Marx then "mutually terminated their prior business relationship and agreed to enter into a new relationship – adding CSI as the manufacturer of the goods to be sold and allowing Marx to perform the function of selling and distributing the goods made by CSI and licensed through Baseline's agreements." Countercl. ¶ 11. Pursuant to the 2009 Agreement, Marx was to make a sale and place an order with CSI and then collect the purchase price of the goods from the end customer. CSI would then bill Baseline some amount less than Baseline would bill Marx for the product sold and Marx, CSI, and Baseline would all realize a profit. Countercl. ¶ 11.

Baseline alleges that Marx and CSI breached the 2009 Agreement. More specifically, Baseline alleges that Marx and/or CSI have failed to deliver goods to customers and have failed to comply with customers requirements, thereby causing customers to cancel their orders and depriving Baseline of its opportunity to realize additional profits. Additionally, Baseline alleges

2

that under the 2009 Agreement, certain amounts are due and owing from Marx to Baseline and that Marx has failed to remit such amounts.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

## III. ANALYSIS

The essence of Baseline's claim is as follows. Baseline alleges that it formed an oral contract with Marx and Baseline wherein Marx would make a sale and place and order with CSI. Marx would then collect the purchase price of the goods from the end consumer. CSI would then bill Baseline some amount less than Baseline would bill Marx for the product sold. Baseline alleges that Marx and CSI failed to perform in accordance with the contract.

In order to survive the motions to dismiss, Baseline is required to plead a breach of contract claim that is "plausible" on its face. Under North Carolina law, the elements of a breach of contract claim are: (1) the existence of a valid contract and (2) breach of the terms of the contract. Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 617 S.E.2d 664, 670 (N.C. App. 2005) (quoting Poor v. Hill, 530 S.E.2d 838, 843 (N.C. App. 2000)). Though Baseline must plead sufficient factual allegations to establish that a "plausible" contract exists, Baseline does

4

not need to plead every detail of the contract or attach a copy of the contract to its counterclaim. See Securimetrics, Inc. v. Hartford Cas. Ins. Co., No. C 0500917CW, 2005 WL 1712008, *2 (N.D.Cal. July 21, 2005) ("Federal law does not require Plaintiff to recite the contract terms verbatim or to attach a copy of the contract to the complaint.").

In the instant case, Baseline has alleged the existence of a contract (Countercl. ¶ 12-13). Baseline has further alleged breach of the terms of the contract by Marx and CSI due to failure to deliver goods to customers or comply with customers' requirements. (Countercl. ¶ 14). As such, Baseline has satisfied the requirements for pleading a breach of contract so long as Baseline's allegations may be taken to support the validity of the alleged contract.

Marx and CSI contend that the Statute of Frauds bars Baseline's claim for breach of contract because Baseline has only alleged the existence of an oral contract. As a general rule, the Statute of Frauds bars the enforcement of a contract "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." N.C. Gen. Stat. § 25-2-201(1). There are, however, several notable exceptions to the general rule. For instance, a contract that would otherwise be barred by the Statute of Frauds is enforceable if the party against whom enforcement is sought admits in its pleadings that there was a contract for sale. N.C. Gen. Stat. § 25-2-201(3). Additionally, a valid and legally enforceable contract may arise in the absence of a written agreement through conduct of the parties which indicates the existence of a contract. N.C. Gen. Stat. § 25-2-204. A valid contract may also be formed through a written confirmation of an earlier oral agreement, even if the confirmation states different or additional terms than those previously agreed upon. N.C. Gen. Stat. § 25-2-207(1).

Two cases–one from outside North Carolina and one from North Carolina–provide this

Court with guidance in evaluating whether Plaintiff has stated a "plausible" breach of contract claim. In Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc., the plaintiff, a manufacturer of pool coatings, purchased a chemical additive from the defendant. 145 F. Supp. 2d 1348, 1354-56 (S.D. Fla. 2001). After the plaintiff's order was filled, the parties exchanged invoices and payment was made. Id. at 1354. In that case, the court found that no contract was created by the parties' invoices because they disagreed on material terms. Id. at 1355. Despite this, the court held that a contract arose from the conduct of the parties in executing the sale. Id.

In a similar case from North Carolina, the court of appeals held that an oral agreement over the telephone for purchase of urea resin created a binding contract at the time of the phone conversation. Se. Adhesives Co. v. Funder Am., Inc., 366 S.E.2d 505, 507-08 (N.C. App. 1988). The court in that case held that the subsequent conduct of the parties, as well as their prior course of dealings, supported the existence of a contract under N.C. Gen. Stat. § 25-2-204(1). Id. at 507. The court further held that a bill of lading, which disclaimed the warranties of merchantability and fitness and which was shipped alongside the urea resin, materially altered the terms of the original contract and was unenforceable since these terms had not been accepted by the purchaser. Id. at 507-08.

In the instant case, Marx and CSI acknowledge the existence of a written contract but deny the existence and terms of the 2009 Agreement alleged by Baseline. After further discovery, Baseline may, like the purchasers in both Se. Adhesives and Premix, be able to prove the existence of a legally enforceable contract arising from the conduct of the parties in performing under the terms of the 2009 Agreement as alleged by Baseline separate and apart from the previous written contract. Similar to Se. Adhesives, further discovery regarding the parties' previous dealings may contribute to finding the existence of a contract. Consequently,

viewing the facts in the light most favorable to Baseline, it would be improper to dismiss Baseline's breach of contract claim at this stage in the litigation.

Marx and CSI further argue that Baseline fails to state a claim for relief because the contract that Baseline alleges to exist was not supported by consideration and the counterclaim fails to allege damages. This Court disagrees with both contentions.

Viewing the facts in the light most favorable to the Plaintiff, Plaintiff has alleged an oral agreement supported by consideration. It is well-settled law that, in order to be enforceable, a contract must be supported by consideration. Investment Properties v. Norburn, 188 S.E.2d 342, 345 (N.C. 1972). A mere promise, without more, is unenforceable." Scott v. Foppe, 100 S.E.2d 238, 241 (N.C. 1957). "As a general rule, consideration consists of some benefit or advantage to the promisor or some loss or detriment to the promisee." Investment Properties, 188 S.E.2d at 345. It has also been found that consideration exists when the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, regardless of whether there is any actual loss. Id. In the instant case, Baseline's counterclaim sufficiently alleges a contract supported by consideration. Under the 2009 agreement alleged by Baseline, Marx, CSI, and Baseline all made promises to undertake activities which they would be under no legal obligation to perform. Marx was responsible for selling the merchandise, collecting the purchase price from the end consumer, and placing an order with CSI–all actions that Marx was under no legal obligation to undertake. In return for undertaking these obligations under the 2009 agreement, Marx ultimately received the benefit of a financial profit. Similarly, CSI received orders from Marx and then billed Baseline at a higher rate–requiring CSI to perform work and producing a benefit for CSI. Finally, Baseline received a financial benefit from the contract and gave Marx and CSI permission to produce Baseline

sports-related merchandise.

This Court similarly rejects Marx and CSI's argument that Baseline's counterclaim fails to sufficiently allege damages arising from breach of contract. In paragraph 14 of the counterclaim, Baseline alleges that "Marx and/or CSI have failed to deliver goods to customers and have failed to comply with customer requirements, thereby causing customers to cancel their orders and, accordingly, depriving Baseline of its opportunity to realize additional profits." Further, Baseline alleges that Marx owes Baseline on certain amounts and that Marx has failed to remit such amounts. Countercl. ¶ 15. Even if this Court were to accept Marx and CSI's contention that Baseline has failed to allege damages, which this Court declines to do at this stage in the litigation, Marx and CSI's motions to dismiss would still be denied. Marx and CSI have cited to no authority, and this court has found no authority in North Carolina case law, where a breach of contract claim has been dismissed for failure to allege damages. As stated above, the elements of a breach of contract under North Carolina law are: (1) the existence of a valid contract and (2) breach of the terms of the contract. Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 617 S.E.2d 664, 670 (N.C. App. 2005) (quoting Poor v. Hill, 530 S.E.2d 838, 843 (N.C. App. 2000)). As such, Marx and CSI are not entitled to dismissal of Baseline's breach of contract counterclaim on the ground that Baseline failed to sufficiently allege damages.

Without further fact finding, this court is unable to determine if a contract enforceable on the terms alleged by Baseline arose from the transactions between the parties in this case. The arguments presented by Marx and CSI are well taken and seem to present a formidable hurdle for Baseline; however, they would be better asserted as affirmative defenses, which can be addressed on a motion for summary judgment or at trial. Moreover, because the pleadings allege

facts which construed in the light most favorable to Baseline could satisfy the Statute of Frauds, Marx and CSI's motions to dismiss are DENIED and Baseline's claim for breach of contract may proceed.

## IV. CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED THAT**:

(1) Plaintiff's Motion to Dismiss Defendant's Counterclaim (Doc. #10) is **DENIED.**

(2) Third-Party Defendant Consumer Specialties of North Carolina's Motion to Dismiss Breach of Contract Claim (Doc. #15) is **DENIED.**

Signed: July 26, 2011

Richard L. Voorhees
United States District Judge